WILLIAM H. PRUITT (SBN 6783)
JOSEPH R. MESERVY (SBN 14,088)
BARRON & PRUITT, LLP
3890 West Ann Road
North Las Vegas, Nevada 89031
(702) 870-3940
bpruitt@lvnvlaw.com
jmeservy@lvnvlaw.com

DANIEL F. POLSENBERG (SBN 2376)
J CHRISTOPHER JORGENSEN (SBN 5382)
KORY J. KOERPERICH (SBN 14,559)
JOHN M. MCCORMICK-HUHN (SBN 15,961)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
DPolsenberg@LewisRoca.com
CJorgensen@LewisRoca.com
KKoerperich@LewisRoca.com
JMcCormick-Huhn@LewisRoca.com

*Attorneys for Plaintiff Progressive
Northern Insurance Company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY;<br><br>Plaintiff,<br><br>v.<br><br>TONY PETE FLORES aka RUDY HERNANDEZ, an individual; MA TERESA GUZMAN VALDIVIA, an individual; MA TERESA GUZMAN VALDIVIA as Special Administrator of the Estate of JOSE DE JESUS GUZMAN CERVANTES and mother of minors MONCERRAT GUZMAN, | Case No.:<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

*[left margin: 3993 Howard Hughes Parkway, Suite 600 Las Vegas, NV 89169   LEWIS ROCA]*

EDUARDO GUZMAN GUZMAN, and
ANTHONY GUZMAN GUZMAN
　　　　　　Defendants.

Progressive Northern Insurance Company ("Progressive") sets forth its Complaint and alleges as follows:

**PARTIES**

1.　　Progressive is a Wisconsin corporation with its principal place of business in Madison, Wisconsin.　Progressive underwrites, issues, and services automobile insurance policies.　As it relates to this matter, Progressive issued Policy # 945925972, which provides automobile accident coverage to Tony Pete Flores.　Progressive is, and was at all relevant times, authorized to transact the business of insurance in the state of Nevada.

2.　　Defendant Tony Pete Flores ("Flores") is and was at all times relevant hereto a resident of Clark County, State of Nevada.

3.　　Defendant Ma Teresa Guzman Valdivia ("Ma Teresa"), both individually and as Special Administrator for the Estate of Jose De Jesus Guzman Cervantes, and the mother of minors Moncerrat Guzman, Eduardo Guzman and Anthony Guzman, is and was at all times relevant hereto a resident of Clark County, State of Nevada.

**JURISDICTION AND VENUE**

4.　　This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, and the matter is between citizens of different States.

5.　　Additionally, the claim for declaratory relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).

6.　　Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants reside in Nevada.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

7.    In addition, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the underlying acts, omissions, injuries, and related facts giving rise to Progressive's claims occurred within the District of Nevada.

<u>**GENERAL ALLEGATIONS**</u>

8.    At all relevant times, Flores was listed as a named insured under an auto insurance policy issued by Progressive (Policy # 945925972, the "policy").

### *The Accident*

9.    On or about April 23, 2021, Flores was involved in a motor vehicle accident with Jose De Jesus Guzman—the spouse of Defendant Ma Teresa and father of Moncerrat Guzman, Edwardo Guzman, and Anthony Guzman.  Jose Guzman passed away as a result of injuries sustained in the accident.

10.    At the time of the accident, Flores was operating his vehicle while impaired and was subsequently convicted of a felony and sent to prison in connection to the accident.  To date, Flores remains imprisoned.

11.    Flores was and is represented by David Chesnoff of the law firm Chesnoff & Schonfeld in the criminal proceedings stemming from the April 2021 accident.  Chesnoff & Schonfeld continue to serve as Flores's personal counsel in this and other legal matters connected to the April 23, 2021 accident.

### *Progressive Proactively Offers to Settle with the Guzman Heirs for the Policy Limit and Spends Over a Year and a Half Following Up*

12.    The Progressive policy (# 945925972) was in force and effect at the time of the subject accident and provided $25,000.00 per person and $50,000.00 per accident bodily injury limits, subject to all terms, definitions, conditions and exclusions contained therein.

13.    While incarcerated, Flores asked his sister, Sarah, to file his property damage claim with Progressive.

14.    On May 24, 2021, a Progressive adjuster contacted Sarah to discuss Flores's claim.

15.    During the conversation, Sarah explained to the adjuster that Flores's only coverage was under the Progressive policy and that he had no other insurance policies or assets.

16.    The adjuster later spoke with Flores's mother, who reaffirmed that Flores did not have other assets besides his vehicle.

17.    On May 25, 2021, Sabrina Wibicki, Esq., wrote to Progressive.  She informed Progressive that she represented the surviving heirs and estate of Jose De Jesus Guzman (collectively, the "Guzman Heirs"), regarding the accident and inquired as to the amount of liability coverage applicable to Flores.

18.     On June 2, 2021, Progressive reached out to Ms. Wibicki and issued its first settlement offer of $25,000 for the bodily injury claim—the full policy limits—to the Guzman Heirs.

19.    When Progressive made its first settlement offer, the Guzman Heirs had not yet made any demand.  Progressive was proactive in attempting to resolve this matter.

20.    Between July 2021 and March 2023, Progressive called Ms. Wibicki and her office, Harper Selim, many times in an effort to follow up on whether her clients accepted the offer.  Each call resulted in a message being left for various people, including Ms. Wibicki, her assistant, and an unnamed case manager.  None of these individuals returned Progressive's calls or otherwise communicated with Progressive about the claim against Flores and Progressive's offer of full policy limits.

21.    On January 6, 2022, Progressive made another follow-up call and was able to reach Ms. Wibicki, but she informed Progressive that she and her firm were still investigating.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

22.    On December 1, 2022, Harper Selim contacted Progressive about a property damage claim, but it still had no response to Progressive's proactive tender of the bodily injury limits for the wrongful death claim.

23.    With the exception of the communications discussed above, Progressive had no additional substantive discussions with Ms. Wibicki and her office—despite Progressive's many efforts.

24.    From the outset, Progressive was persistent and diligent in attempting to settle the matter and to avoid litigation, always offering all available policy limits under the Flores policy.

***Post-Demand, Progressive (Again) Offers to Settle for the Policy Limits***

25.    Thereafter, the Guzman Heirs retained attorney Jordan Schnitzer, Esq.

26.    On March 6, 2023—after nearly a year with no communication with Progressive and without any response to Progressive's proactive offer of limits—Mr. Schnitzer issued on behalf of the Guzman Heirs a pre-litigation demand to Progressive, as Mr. Flores's insurer, to settle all claims arising from the subject accident for $50,000.00, an amount that exceeded the available coverage under the subject policy by $25,000.

27.    In response, Progressive re-issued its policy limits offer of $25,000 to the heirs and estate to settle all bodily injury and wrongful death claims arising from the subject accident.

***Progressive Provides a Defense***

28.    On April 20, 2023, a complaint was filed in Nevada's Eighth Judicial District Court by the Guzman Heirs against Flores for wrongful death and other related claims (Case No. A-23-869310-C) ("wrongful death suit").

29. The Guzman Heirs sought compensatory and punitive damages against Flores, including damages provided under NRS 41.085 and NRS 41.100.

30. The Progressive policy issued to Mr. Flores required Progressive to pay for legal representation to defend Mr. Flores in the event he was sued after a motor vehicle accident. Progressive hired attorneys Mark Gentile and Phillip Emerson to represent and defend Flores against the claims being made by the Guzman Heirs. By retaining counsel for Flores in the wrongful death lawsuit, Progressive fulfilled this defense obligation.

31. The counsel provided by Progressive prepared and filed an answer on Flores's behalf, wherein Flores denied the complaint's allegations and raised several affirmative defenses.

32. The answer never admitted that Flores was liable. In fact, one affirmative defense argued that Jose "proximately caused or contributed to" the accident and the resulting damage.

33. As demonstrated by the filing of an answer, Progressive was taking the steps necessary to protect Flores, its insured, and any assets he may have.

34. At no point during the duration of Case No. A-23-869310-C has Progressive denied or otherwise failed to provide a defense for Flores. In complying with its duty under the policy to provide a defense, Progressive retains its right under the policy to settle or defend, at its option, any claim for damages covered by the policy.

35. Progressive's right to control the litigation is outlined in "Part I—Liability to Others" of the insurance policy it issued to Flores. Specifically, "We will settle or defend, at our option, any claim for damages covered by this Part I." The policy defines "we" and "our" as referring to Progressive. (Progressive Nev. Auto Policy 2–3.)

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

36.    Progressive also continued to comply with its duty to indemnify Flores, by offering to settle for the policy limits.

### *The Policy Language Imposes Upon Flores a Duty to Cooperate*

37.    Flores's policy with Progressive contains a section entitled, "Part VI—Duties in Case of an Accident or Loss"—which provides the following: "A person seeking coverage must: 1. cooperate with us [Progressive] in any matter concerning a claim or lawsuit . . . ."

38.    The policy also requires Flores to "send [Progressive] any and all legal papers relating to the claim or suit."

39.    The policy further requires Flores to "attend hearings and trials as [Progressive] require[s]."

40.    The policy further allows Progressive to deny coverage if Flores "has concealed or misrepresented any material fact or circumstance . . . in connection with the presentation or settlement of a claim."

41.    These provisions impose a contractual duty upon Flores to cooperate in the defense of litigation against him, which is a material condition for coverage under Policy # 945925972.

42.    In addition to his duty to cooperate under the subject policy, Flores is also subject to an implied covenant of good faith and fair dealing owed to Progressive under Nevada law.

43.    Despite Progressive's continuous and ongoing efforts to settle and defend this matter for him, Flores disregarded his duties.

### *Flores Colludes with the Guzman Heirs to Forgo a Defense*

44.    Unbeknownst to Progressive, Flores—through his independently retained counsel, Mr. Chesnoff—began negotiating with the Guzman Heirs

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

concerning an assignment, a covenant not to execute, and waiver of certain rights.

45.     The negotiations between Mr. Chesnoff and Flores contemplated Flores assigning his rights to potential claims against Progressive, including claims of breach of contract, breach of implied covenant of good faith and fair dealing, failure to indemnify, failure to communicate settlement offers, and failure to settle.

46.     These negotiations also contemplated agreements that Flores would not object to the Guzman Heirs' evidence or testimony, or present his own witnesses, evidence, or testimony at an anticipated "prove up" hearing concerning the Guzman Heirs' alleged damages.  At this "prove up" hearing, Flores would (1) admit liability, including the predicate acts necessary for punitive damages to be awarded against Flores, (2) agree to relaxed rules of evidence for the presentation of damages evidence; and (3) not challenge any of the damages evidence.  Further, Flores would agree to waive all appellate rights before any evidence being presented to the Court, and in advance of any court rulings on that evidence.  The agreement, in effect, would require Flores to instruct his defense counsel, provided to him by Progressive, to take no further action on his behalf, and to take no part in the "trial" that was proposed under the contemplated agreement.  Remarkably, Flores agreed to all of the above provisions.

47.     Flores and the Guzman Heirs also agreed that the Guzman Heirs would cover the expenses associated with suing Progressive, and any proceeds from those suits that exceeded the amount needed to recover the judgment in Case No. A-23-869310-C would be split between Flores and the heirs.

48.     This arrangement is designed with the purpose of bringing subsequent claims against Progressive after the conclusion of Case No. A-23-869310-C.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

49.     These negotiations and agreement would eventually become memorialized in a Covenant Not to Execute.

50.     Progressive is not a signatory to the Covenant Not to Execute.

51.     Thereafter, on August 8, 2024, counsel for the Guzman Heirs, after negotiating an agreement with Flores that he would not oppose the Guzman Heirs' claims in Case No. A-23-869310-C, provided Progressive with a copy of a Covenant Not to Execute (the "Covenant") and informed Progressive of his clients' intent to have Flores sign the Covenant.

52.     Prior to receiving the unexecuted Covenant, Progressive was never consulted about the Covenant nor given an opportunity to advise its insured of the ramifications of entering into the Covenant as proposed by the Guzman Heirs.

53.     When counsel for the Guzman Heirs provided the copy of the unexecuted Covenant to Progressive, he imposed a deadline for Progressive to provide any "reasonable modifications" to the Covenant by September 20, 2024.

54.     The draft of the Covenant provided to Progressive included the following terms:

> 16.     In exchange for the above-referenced assignment, Plaintiff and Defendant shall stipulate, and direct their counsel of record to execute a stipulation: (i) that Defendant was the driver of the vehicle that is and was responsible for causing the serious collision which is the subject of this lawsuit; (ii) that the April 23, 2021 accident caused death to Mr. Guzman, as detailed within the various NRCP 16.1 Disclosures from Plaintiff in the present litigation; (iii) Defendant is responsible for Mr. Guzman's death, (iv) that Mr. Flores was driving under the influence at the time of the collision, in conscious disregard for the rights and safety of others on or near the road including Mr. Guzman; (v) that the amount of damages will be determined at a "prove-up" hearing before the District Court Judge in the Case A-23-869310-C and entered as a Judgment; and (vi) the rules of evidence for the "prove up" hearing are relaxed to comport with the Nevada Short Trial Rules including NSTR 15, 16

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

and 19(a) such that Plaintiff may rely upon depositions, interrogatories, requests for admission, medical records, the death certificate and expert reports without the need to call live witnesses; (vii) Defendant will neither call any witnesses, nor examine any witnesses, nor present any evidence of their own nor make any objection to evidence or testimony at the "prove up" hearing; and (viii) Defendant expressly waives any appellate rights related to any past ruling of the Court or any damages determined by the Court, including costs, fees and interest.

...

24.    After execution of this Agreement, Defendant will not provide further defense of the suit. It is the express intent of the parties that Defendant will not participate in the "prove up" hearing. Specifically, Defendant will neither call any witnesses, nor examine any witnesses, nor present any evidence of their own nor make any objection to evidence or testimony at the "prove up" hearing.

55.    The Covenant also permits the Guzman Heirs to "seek punitive damages, attorneys' fees, costs and interest" against Flores. These will also "become part of any judgment against Defendant."

56.    The foregoing terms of the unexecuted Covenant are not consistent with a reasonable covenant not to execute and, instead, demonstrate a purpose or intent to collude with an intent to secure an excess judgment and to then sue Progressive to collect on said judgment, actions which are designed to injure the interests of Progressive—as an absent or nonparticipating party—by providing a means whereby a collusive judgment may be obtained.

57.    Indeed, the Covenant's language abandons any notion or consideration of a trial on the merits to determine damages and, waives all defenses and appellate rights regardless of what "evidence" the underlying plaintiffs may attempt to introduce and instead, provides that an uncontested prove-up with relaxed evidentiary standards will be used to secure a judgment. This is evident by the fact that Flores will not offer any defense, cannot present

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

counter evidence and, in fact, may not even participate in any way in the proceeding.

58.    The Covenant Not to Execute interferes with and unreasonably restricts Progressive's ability to perform its duty to defend Flores under the policy due to Flores's instruction to his defense counsel not to call witnesses, present evidence or argument, or take any action to protect Flores's interest.

59.    As such, the proposed mechanism for securing a judgment is a one-sided show "trial" intended to maximize any potential judgment, which process is devoid of any consideration of due process or fundamental fairness to Progressive.

60.    This collusive agreement in contravention of the rights and duties imposed constitutes a breach of the duty to cooperate by Flores.

### Flores Is Attempting to Position Himself to Make Money from Being Sued for Wrongful Death

61.    The Covenant does not put any of Flores's assets at risk.  In fact, the Covenant allows Flores to profit from the litigation.

62.    Specifically, Flores—who is incarcerated and has no assets, as stated by his sister and mother—is attempting to position himself to make money from being sued for a criminal act and for being named as a defendant in Case No. A-23-869310-C.

63.    The Covenant provides that the Guzman Heirs "agree not to take or attempt any action of any kind to collect the judgment entered by the Court against Defendant personally," but would instead "recover and collect the judgment from" Progressive.

64.    The Covenant allows Flores to retain "50% of the proceeds from any sums above the judgment" obtained by the heirs in pursuit of claims against Progressive.  The Guzman Heirs keep the other 50%.

65.   Flores now has a financial interest in the success of the claims against him, *i.e.* it is in his interest for the Guzman Heirs' claims against him to be successful—and the higher the excess judgment, the better financial payout Flores may receive.

66.   Moreover, Flores will not be responsible for any of the expenses associated with the Guzman Heirs' collection efforts, which includes bringing suit against Progressive.

67.   The terms of the Covenant provide that the Guzman Heirs will shoulder any such collection expenses: "The Plaintiff is solely responsible for all efforts to collect the judgment.  The Plaintiff agrees that all such efforts will be undertaken solely at their own risk and expense."

68.   These financial interests incentivized Flores to collude against Progressive in violation of his duties under the policy, including abandoning his defense in the wrongful death suit to allow a judgment against himself under a construct that is designed to be far in excess of the policy's limit.

69.   It is antithetical to a liability insurance policy that an insured can profit from his actions, yet in his agreement with the Guzman Heirs, Flores is attempting to set up an additional cause of action and to benefit financially from it.

### Flores Executes the Collusive Covenant Despite Progressive's Objections

70.   In the subsequent weeks, Progressive repeatedly communicated to its insured and the Guzman Heirs that their course of action related to the Covenant was collusive, sought to harm Progressive, and would draw into question Flores's coverage.

71.   On September 19, 2024, Progressive issued separate correspondences to counsel for Flores and the Guzman Heirs.

126774594.1

72.    In the correspondence to Mr. Chesnoff, Progressive objected to specific terms of the unexecuted Covenant, including those reproduced above. Progressive conveyed that the Covenant unfairly sought to harm Progressive's interests and could jeopardize Flores's coverage.

73.    More specifically, in addressing the foregoing concerns, Progressive referenced "Part VI—Duties in Case of an Accident or Loss" in the Flores policy, noting that Flores is required to cooperate with Progressive "in any matter concerning a claim or lawsuit" to receive coverage under the subject policy.

74.    Progressive explained that if the Covenant was executed, Flores would be in violation of his duty to cooperate, and it could void his coverage under his insurance policy.

75.    Moreover, Progressive warned that an insured may be deemed to have breached the cooperation clause of a liability insurance policy when he assists the claimant in the maintenance of the action or has engaged in collusive conduct with the claimant.

76.    Progressive further warned that by executing the Covenant, Flores may be in breach of the insured's duty of good faith and fair dealing, as owed to Progressive.

77.    As such, Progressive communicated that it did not consent to and strongly recommended against the finalization and execution of the Covenant.

78.    Progressive warned that any judgment obtained as a result of the Covenant would be collusive in nature and have no binding effect upon Progressive.

79.    Progressive's correspondence to Mr. Schnitzer, counsel for the Guzman Heirs, expressed concerns and objections similar to the ones presented to Flores's counsel.

80.    Despite the timely issuance of Progressive's response, Progressive subsequently learned that Flores had already executed the Covenant.

81.     By executing the Covenant, Flores and the Guzman Heirs further demonstrated their intent to injure the interests of Progressive—as an absent or nonparticipating party—by providing a means whereby a collusive judgment may be obtained.

82.     Flores derailed all efforts to date by Progressive to settle the matter and to defend him, and he thwarted any future chances Progressive and defense counsel for Flores could have had at defending against the Guzman Heirs' claims and mitigating any award of damages.

83.     Progressive's concerns of a collusive agreement were again addressed in writing to counsel on October 16, 2024, October 29, 2024, and November 7, 2024.  Progressive also reiterated that it considered any judgment obtained pursuant to the Covenant's terms to be without binding effect on Progressive.

84.     The parties, aware of the potential ramifications, opted to carry out their collusive plan with complete disregard for the harm that would befall Progressive.

### The Guzman Heirs and Flores Submit a Stipulation Memorializing their Collusion and Intent to Harm Progressive

85.     On or about Friday, November 8, 2024, the Guzman Heirs and Flores submitted a stipulation and order in the wrongful death suit, in which they agreed to the Covenant's terms over Progressive's objection.

86.     The stipulation provides that Flores is liable for wrongful death and that the amount of damages will be determined at a "prove-up" hearing before a judge applying Nevada Short Trial Rules.  Those rules apply loosened evidentiary standards and do not require any live witnesses.

87.     Presumably, based on the language found in the Covenant, the damages that will be determined at the hearing also include punitive damages.

88.    In the stipulation, Flores agreed not to "call any witnesses, nor examine any witnesses, nor present any evidence of his own nor make any objection to evidence or testimony at the 'prove up' hearing."

89.    Flores also "expressly waive[d] any appellate rights related to any past ruling of the Court or any damages determined by the Court, including costs, fees and interest."

90.    Progressive, for its part, has continued to provide a defense for Flores under the policy—holding up its end of the contract with Flores despite these collusive acts to date.

### FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT AGAINST FLORES)

91.    Progressive incorporates the foregoing allegations in this claim.

92.    Progressive and Flores entered a valid and existing contract with respect to auto insurance coverage—specifically, Policy # 945925972.

93.    Pursuant to the policy, Flores was required to cooperate with Progressive "in any matter concerning a claim or lawsuit."

94.    Various other provisions also required Flores to share with Progressive all relevant legal papers relating to a suit, to not conceal material facts or circumstances in connection with a claim, and to attend hearings and trials as requested by Progressive.

95.    Flores's duty to cooperate with Progressive, pursuant to the policy, existed in Case No. A-23-869310-C.

96.    Progressive has never denied or otherwise failed to provide a defense for Flores in Case No. A-23-869310-C.  Progressive has never denied its duty to indemnify Flores and has always offered full policy limits in this matter.

97.    In exercising its duty to defend Flores, Progressive maintains the right to control the defense in the wrongful death suit.

98.   Flores concealed legal papers relating to the suit, which he was required to disclose to Progressive, while negotiating and executing the Covenant.

99.   Flores also breached the agreement by entering into the Covenant with terms that are collusive and prohibit Progressive's ability to provide a defense in the wrongful death suit.

100.   Flores further breached by agreeing to the Covenant's terms that he would be held liable for punitive damages, which defendants would then attempt to recover from Progressive in an independent action despite the policy otherwise barring coverage for punitive or exemplary damages.

101.   Flores's conduct demonstrates that he has willfully and materially breached his duty to cooperate with Progressive in the defense of the wrongful death suit.

102.   Flores's breaches of his duty to cooperate have materially prejudiced Progressive's ability to contest the merits of the Guzman Heirs' claims in the wrongful death suit—to the benefit of Flores.

103.   Flores further breached his duty to cooperate by agreeing to allow a collusive judgment to be entered against him with no defense thereto.  Flores's agreement to this was made in an attempt to shift his financial responsibility for his acts to Progressive while maintaining a financial interest in that set up, which allows Flores to benefit from his wrongful conduct in the accident and subsequently agreeing to the collusive Covenant Not to Execute.

104.   Progressive has suffered damages and will continue to suffer damages from Flores's breach, including the costs of defending the collusive wrongful death suit and the certainty of a judgment in excess of the policy limit, which Flores and the Guzman Heirs will then attempt to collect from Progressive.

105.   As a direct and proximate result of Flores's breach, Progressive has suffered damages in excess of $75,000.

106.   Progressive has been forced to retain counsel to pursue this action and has incurred attorney fees as a result of Flores's breach.

### SECOND CLAIM FOR RELIEF
### (BREACH OF THE COVENANT OF GOOD FAITH
### AND FAIR DEALING AGAINST FLORES)

107.   Progressive incorporates the foregoing allegations in this claim.

108.   Nevada law implies a duty of good faith and fair dealing into the policy between Flores and Progressive.

109.   The implied covenant of good faith and fair dealing prohibits Flores from performing unfair acts in the wrongful death lawsuit that work to the disadvantage of Progressive—*e.g.,* eliminating Progressive's ability to adequately defend him.

110.   If Flores is found to have not breached the express terms of the policy, Flores may still be liable for breaching the implied covenant of good faith and fair dealing.

111.   The purpose of the cooperation clause is to require that the insured cooperate in good faith with Progressive in the defense of claims, which, among other things, preserves Progressive's right to adequately prepare a defense, works to mitigate damages that may be awarded against the insured, and limits the possibility of fraud or collusion between the insured and a claimant.

112.   The Covenant, by its own terms, demonstrates Flores had the clear purpose or intent to injure the interests of Progressive—an absent or nonparticipating party—because the Covenant provides a means whereby a collusive judgment can be obtained.

113.   Flores's collusion with the Guzman Heirs, violates the spirit and intent of the insurance policy.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

114.   Flores further violated the spirt and intent of the insurance policy by negotiating a deal in which he obtained a financial interest in the success of the Guzman Heirs' claims against him as well as a future claim against Progressive.

115.   Flores breached the duty by acting in a manner that was unfaithful to the purpose of the agreement, and Progressive's justified expectations under the Agreement were thus denied.

116.   Flores's breaches of the duty of good faith and fair dealing have materially prejudiced Progressive's ability, on behalf of its insured, to contest the merits of the Guzman Heirs' claims in the wrongful death suit.

117.   Progressive has suffered and will continue to suffer damages from Flores's breach, including the costs of defending the wrongful death suit and the certainty of a judgment in excess of the policy limit, which Flores and the Guzman Heirs will attempt to collect from Progressive.  Damages will continue in defending the subsequent action against Progressive that the Guzman Heirs and Flores jointly have conspired to bring.

118.   As a direct and proximate result of Flores's breach, Progressive has suffered damages in excess of $75,000 and will continue to suffer damages in ongoing and future litigation.

119.   Progressive has been forced to retain counsel to pursue this action and has incurred attorney fees as a result of Flores's breach.

**THIRD CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT AGAINST ALL DEFENDANTS)**

120.   Progressive incorporates the foregoing allegations in this claim.

121.   The duty to cooperate is a material condition for coverage under the policy issued by Progressive to Flores.

122.   Progressive has sought Flores's participation in the defense of the wrongful death suit and attempted to prevent execution of the Covenant, but Flores is willfully refusing to cooperate with Progressive.

123.   By executing the Covenant, Flores is in violation of his duty to cooperate with Progressive, or, in the alternative, his duty of good faith and fair dealing.

124.   Progressive is materially and actually prejudiced in the defense of the wrongful death suit, on behalf of its insured, as a result of Defendants' use of the Covenant to unreasonably eliminate Progressive's ability to provide a defense to its insured.

125.   Defendants are using the Covenant to secure a collusive judgment in the wrongful death action.

126.   Flores's breaches, detailed above, voids the policy coverage that Progressive owed for "bodily injury" and "property damage" for which Flores may become legally responsible for in Case No. A-23-869310-C.  However, this shall not affect Progressive's coverage obligations for coverage up to the statutory minimum liability insurance limits under NRS 485.3091.  *See* NRS 485.3091(5) (absolute-liability provision); *Torres v. Nev. Direct Ins. Co.*, 131 Nev. 531, 353 P.3d 1203 (2015).

127.   Progressive has fulfilled its obligation under NRS 485.3091 by proactively offering $25,000—the full policy limits, which satisfies Nevada's statutory minimum liability insurance limits.  Progressive continues to offer the Guzman Heirs $25,000 pursuant to NRS 485.3091.

128.   This Court "may declare the rights and other legal relations of any interested party seeking such declaration" pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).

129.   There currently exists between Progressive and Defendants justiciable controversies ripe for judicial determination, including whether the

Covenant executed by Defendants is intended to and has injured Progressive by providing a means whereby a collusive judgment will be obtained; whether by executing the collusive Covenant, Flores breached his duty to cooperate with Progressive under the subject policy or, in the alternative, the implied covenant of good faith and fair dealing owed to Progressive; whether any judgment obtained pursuant to the Covenant is enforceable against or binding upon Progressive; and whether the assistance given by Flores to the Guzman Heirs in the maintenance of their action and the collusive conduct between himself and the Guzman Heirs in the drafting and execution of the Covenant precludes coverage for Flores under the subject policy.

130.    Progressive and Defendants have adverse legal positions with respect to the aforementioned legal controversies.

131.    Progressive has a legally protectable interest in determining whether it owes coverage beyond the statutory minimum limits to Flores and a continuing duty to defend him under the subject insurance policy and whether any judgment obtained pursuant to the Covenant is enforceable against it or binding upon it.

132.    Accordingly, Progressive is entitled to a declaratory judgment stating that Flores has breached his duty to cooperate with Progressive under the policy—or, in the alternative, the implied covenant of good faith and fair dealing owed to Progressive—by executing the Covenant.

133.    Furthermore, Progressive is entitled to a declaratory judgment stating that the Covenant is intended to and has injured the interests of Progressive, an absent or nonparticipating party, as it provides a means whereby a collusive judgment may be obtained.

134.    Progressive is entitled to declaratory judgment stating that any judgment obtained by decedent's surviving heirs or the estate pursuant to the Covenant is collusive and is not enforceable against or binding upon

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Progressive and that Progressive is only responsible for the statutory minimum limits under NRS 485.3091.

135. Additionally, Progressive is entitled to a declaratory judgment stating that no coverage is available to Flores under the subject policy—except for the statutory minimum limits under NRS 485.3091—based on the assistance given by Flores to the Guzman Heirs in the maintenance of their action and the collusive conduct between himself and the Guzman Heirs in the drafting and execution of the Covenant.

WHEREFORE, Plaintiff prays for judgment as follows:

(A)    A jury trial on all issues so triable;

(B)    An award of compensatory damages and consequential damages;

(C)    For a declaratory judgment stating that Flores has breached his duty to cooperate with Progressive under the subject policy—or, in the alternative, the implied covenant of good faith and fair dealing owed to Progressive—by executing the Covenant;

(D)    For a declaratory judgment stating that the Covenant is intended to and has injured the interests of Progressive, an absent or nonparticipating party, as it provides a means whereby a collusive judgment may be obtained;

(E)    For a declaratory judgment stating that any judgment obtained by the Guzman Heirs pursuant to the Covenant is collusive and is not enforceable against or binding upon Progressive and that Progressive is only responsible for the statutory minimum limits required under NRS 485.3091;

(F)    For a declaratory judgment stating that no coverage is available to Flores under the subject policy—except for the statutory minimum limits under NRS 485.3091—based on the assistance given by Flores to the Guzman Heirs in the maintenance of their

1    action and the collusive conduct between himself and the Guzman

2    Heirs in the drafting and execution of the Covenant;

3    (G)    For reasonable attorney fees and costs to the extent permitted by

4    law, statute, the Federal Rules of Civil Procedure, or contract; and

5    (H)    For such other and further relief as the Court deems proper.

6    DATED this 26th day of November, 2024.

7

8                                         LEWIS ROCA ROTHGERBER CHRISTIE LLP

9                                         By: */s/ J Christopher Jorgensen*
                                          DANIEL F. POLSENBERG (SBN 2376)
10                                        J CHRISTOPHER JORGENSEN (SBN 5382)
                                          KORY J. KOERPERICH (SBN 14,559)
11                                        JOHN M. MCCORMICK-HUHN (SBN 15,961)
                                          LEWIS ROCA ROTHGERBER CHRISTIE LLP
12                                        3993 Howard Hughes Parkway, Suite 600
                                          Las Vegas, Nevada 89169
13

14                                        WILLIAM H. PRUITT (SBN 6783)
15                                        JOSEPH R. MESERVY (SBN 14088)
                                          BARRON & PRUITT, LLP
16                                        3890 West Ann Road
17                                        North Las Vegas, Nevada 89031
                                          (702) 870-3940
18

19                                        *Attorneys for Plaintiff Progressive*
                                          *Northern Insurance Company*
20

21

22

23

24

25

26

27

28